**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED

97 OCT -6 PM 1:59

U.S. DISTRICT COURT
N.D. OF ALABAMA

**BOOKS-A-MILLION, INC., et al.,**                    ]
                                                      ]
          Plaintiff(s),                               ]
                                                      ]
     vs.                                              ]     CV-97-N-1762-S
                                                      ]
**PENGUIN BOOKS, USA, INC., et**                      ]
**al.,**                                              ]
                                                      ]          ENTERED
          Defendant(s).                               ]
                                                             OCT 6 1997

## Memorandum of Opinion

### I.    Introduction.

This civil action was originally brought in the Circuit Court of Jefferson County,

Alabama, and removed by the defendants to this court.  Plaintiffs Books-A-Million, Inc.

("BAM") and American Wholesale Book Companies, Inc. ("AWBC") (hereinafter

collectively referred to as "plaintiffs") have brought suit against Penguin Books, USA, Inc.

("Penguin Books"); Pearson plc ("Pearson plc"); Pearson, Inc. ("Pearson, Inc."); and

Penguin Putnam, Inc. ("Penguin Putnam").[1]  Plaintiffs' claims as to all defendants are: (1)

breach of contract; (2) fraud; (3) suppression; (4) intentional interference with business

relations.

The court presently has for consideration the plaintiff's motion to remand, filed on

August 13, 1997.  The plaintiff asserts that the action should be remanded because: (1)

there is not complete diversity of citizenship as between the parties; (2) the court lacks

---

[1] On July 24, 1997, the court dismissed the action as against all fictitious defendants.

subject matter jurisdiction; and (3) there is no fraudulent joinder of any party defendant. *Plaintiff's Motion to Remand* at 1 (non-paginated); *Memorandum in Support of Plaintiffs' Motion For Remand* at 1 & 11-20. The defendants assert that removal was proper because the plaintiff fraudulently joined non-diverse defendants. *See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand and in Support of Defendants' Cross-Motion to Dismiss Penguin Putnam, Inc., Pearson, Inc., and Pearson plc* at 1-2.

## II.    **Allegations of the Complaint.**

The plaintiffs allege that, from 1991 through 1996, the plaintiffs purchased a "significant volume of books" from the defendants.[2] *Complaint* at 2-3. During that same period of time, plaintiffs allege that their competitors purchased a large volume of books from the defendants and received "secret discounts." *Id.* Plaintiffs contend that they did not receive these secret discounts with respect to their purchases and that, as a result, plaintiffs have paid a "much higher rate for its books than that paid by the other purchasers who received the secret discounts." *Id.* at 3.

In particular, plaintiffs claim that, during the period 1991 to 1996, defendants and plaintiffs entered into agreements by which defendants promised to give plaintiffs the same discounts defendants were giving other purchasers. *Id.* By giving secret discounts to other purchasers, but not to plaintiffs, plaintiffs assert that the defendants breached those agreements and that plaintiffs were damaged thereby. *Id.*

The plaintiffs also assert claims of fraud against all the defendants on the basis that

---

[2] In their complaint, the plaintiffs refer to the four defendants collectively as "Penguin" and assert their several claims against "Penguin" or "defendants." *See Complaint* at 1-6. None of the claims for relief are directed against less than all of the defendants generally. *See id.*

2

the defendants knowingly "represented to plaintiffs that plaintiffs were receiving all available discounts." *Complaint* at 4. According to the plaintiffs, the plaintiffs did not receive notice of the secret discounts until late 1996 because "the secret discounts were systematically and fraudulently concealed by defendants." *Id.* Moreover, the plaintiffs claim that the defendants "continued to misrepresent that plaintiffs were receiving all available discounts until early 1997, when [defendants] publicly acknowledged the existence of the secret discounts." *Id.* In this vein, the plaintiffs further allege in their complaint a suppression claim against the defendants. *Id.*

Finally, the plaintiffs contend that the defendants intentionally interfered with the plaintiffs' business relations. *Id.* Specifically, the plaintiffs claim that the defendants knowingly provided the secret discounts to other purchasers, failed to reveal the secret discounts to plaintiffs, and that the plaintiffs suffered damages as a result. *Id.*

The evidence indicates that the citizenship of the parties is as follows: Plaintiffs BAM and AWBC are, respectively, Delaware and Alabama corporations with each having its principal place of business in Alabama. *Complaint* at 1. Defendant Pearson plc is a holding company organized and existing under the laws of the United Kingdom. *Affidavit of Thomas P. Wharton* (Aug. 25, 1997) at ¶2. Defendant Pearson, Inc., is a Delaware corporation with its principal place of business in the State of New York. *Id.* at ¶11. Defendant Penguin Putnam, Inc., is a Delaware corporation and its principal place of business is in New York. *Affidavit of David O'Leary* (Aug. 25, 1997) at ¶2. Defendant Penguin Books USA, Inc., is a New York corporation with its principal place of business in New York. *Affidavit of Robert T. Eickmeyer* (Aug. 25, 1997) at ¶2.

3

## III.  Discussion.

### 1.  Subject Matter Jurisdiction.

Plaintiffs argue that this court should remand the case to Jefferson County Circuit Court because there is no diversity of citizenship. *Plaintiff's Motion to Remand* at 1 (non-paginated).  It is well established that "the right of removal from the state courts to the United States courts is statutory.  A suit commenced in a state court must remain there until cause is shown under some act of Congress for its transfer." *Gold-Washing & Water Co. v. Keyes*, 96 U.S. 199, 201 (1877).  Removal is proper only if the federal court has original jurisdiction over the parties and the claims raised in the pleadings. 28 U.S.C. § 1441;[3] *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1556 (11th Cir. 1989).  All defendants that have been properly joined and served at the time of removal must join in the petition for removal or the petition is defective.  *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349*, 427 F.2d 325 (5th Cir. 1970);[4] *see also In re Federal Savings & Loan Ins. Corp.*, 837 F.2d 432 (11th Cir. 1988).  The federal court must determine whether removal was proper "according to the plaintiff's pleadings at the time of the

---

[3] Section 1441(a) provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a) (emphasis added); *see also* 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3721, at 189 (2d ed. 1985) (removal proper if plaintiff could have brought original action in federal court).

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

4

petition for removal." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (quoting *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

Because there is no federal question raised in the complaint, diversity of citizenship is the only proper grounds for federal subject matter jurisdiction. Section 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . . (1) Citizens of different States . . . ." 28 U.S.C. § 1332. Early on, the Supreme Court held that diversity jurisdiction does not exist where any defendant is a citizen of the same state as the plaintiff. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); In *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978), the Court stated:

> [28 U.S.C. § 1332(a)] and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff. Over the years Congress has repeatedly re-enacted or amended that statute conferring diversity jurisdiction, leaving intact this rule of complete diversity. Whatever may have been the original purposes of diversity of citizenship jurisdiction, this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant.

*Owen*, 437 U.S. at 373-74. The rule of complete diversity is "[o]ne of the oldest and most elementary propositions of federal law." *Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1153 (11th Cir. 1985); *see also* Cabalceta, 883 F.2d at 1557. The removing party bears the burden of proof on the issue of diversity. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

Plaintiffs argue that this case should be remanded to the state court because complete diversity does not exist.  Plaintiff Books-A-Million, defendant Pearson, Inc., and defendant Penguin Putnam, Inc., are all incorporated in Delaware.  For purposes of both diversity and removal, section 1332(c)(1) provides for dual citizenship for corporations: "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1). Therefore, because the plaintiff is a corporate citizen of the same state as two of the defendant corporations, this action is clearly not removable on the face of the pleadings.

### 2.    **Fraudulent Joinder.**

The defendants will survive a motion to remand, however, if they can show that plaintiffs fraudulently joined non-diverse parties in an attempt to avoid removal.  *See Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1556 (11th Cir. 1989); *Insinga v. La Bella*, 845 F.2d 249 (11th Cir. 1988); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).  In order to sustain a claim of fraudulent joinder, the defendants must establish either (1) that there is no possibility the plaintiff can establish any cause of action against a non-diverse defendant; or (2) that the plaintiff has fraudulently pled jurisdictional facts in order to name the non-diverse defendant in the original state court action.  *Crowe,* 113 F.3d at 1538; *Cabalceta,* 883 F.2d at 1561.  The burden of the removing party is a "heavy one."  *Crowe,* 113 F.3d at 1538.

To determine whether the case should be remanded, the court must evaluate the factual allegations in the light most favorable to the plaintiffs and must resolve any uncertainties about state substantive law in favor of the plaintiffs.  *See id*.  The court makes

6

these determinations based on the plaintiffs' pleadings at the time of removal; but the court

may consider affidavits and deposition transcripts submitted by the parties. *See id.,*

*Cabalceta,* 883 F.2d at 1561. Finally, "[i]f there is even a *possibility* that a state court would

find that the complaint states a cause of action against *any one* of the resident defendants,

the federal court *must* find that joinder was proper and remand the case to the state court."

*Coker,* 709 F.2d at 1440 (citing *Parks v. New York Times Co.,* 308 F.2d 474, 477-78 (5th Cir.

1962)) (emphasis added).

In contrast to the heavy burden required of a removing party, a party seeking

remand has a "much lighter" burden. *Crowe,* 113 F.3d at 1541. As the Eleventh Circuit

recently articulated

> Over and over again, we stress that "the trial court must be certain of its
> jurisdiction before embarking upon a safari in search of a judgment on the
> merits." When considering a motion for remand, federal courts are not to
> weigh the merits of a plaintiff's claim beyond determining whether it is an
> arguable one under state law.
>
>                    . . .
>
> [T]he plaintiff need not show that he could survive in the district court a
> motion for summary judgment filed by that in-state defendant. For a remand,
> the plaintiff's burden is much lighter than that: after drawing all reasonable
> inferences from the record in the plaintiff's favor and then resolving all
> contested issues of fact in favor of the plaintiff, there need only be "a
> reasonable basis for predicting that the state law *might* impose liability on
> the facts involved."

*Crowe,* 113 F.3d at 1538, 1541-42 (citations omitted) (emphasis in original).

The starting point for an analysis of the fraudulent joinder issue is plaintiffs' state

court complaint at the time of removal. Throughout the complaint, Pearson plc, Pearson,

Inc., Penguin Putnam, Inc., and Penguin Books are referred to jointly. Plaintiffs assert their

several claims against "Penguin" or "defendants." *See Complaint* at 1-6. Count one states

7

a cause of action for breach of contract; counts two and three state causes of action for fraud and suppression; and count four states a cause of action for intentional interference with business relations.

As stated, the applicable test is whether there is *any possibility* that the plaintiffs could establish a cause of action against Pearson, Inc., or Penguin Putnam, Inc., the non-diverse parties, on *any* of the four counts in the original complaint. On motion to remand, plaintiffs allege that they have had direct dealings with officers and employees of Penguin Putnam, which, if proven would substantiate the claims against Penguin Putnam for fraud and suppression. *Memorandum in Support of Plaintiffs' Motion for Remand* at 13; *Plaintiffs' Reply Brief in Support of Motion to Remand* at 4-6. The defendants contend that "[i]n the absence of any direct claims against Pearson plc, Pearson Inc. and Penguin Putnam Inc., Plaintiffs will have to prove 'successor' or 'alter ego' liability of the moving Defendants to defeat diversity jurisdiction." *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand and in Support of Defendants' Cross-Motion to Dismiss Penguin Putnam Inc., Pearson Inc., and Pearson plc* at 8. However, plaintiffs' complaint arguably asserts *direct* claims of fraud and suppression (as well as breach of contract and intentional interference with business relations) against Penguin Putnam, Pearson plc, and Pearson Inc. In particular, plaintiffs' complaint alleges:

> *Defendants* continued to misrepresent that plaintiffs were receiving all available discounts until early 1997. . . . Defendants continued to suppress and deny the existence of the secret discounts until early 1997. . . . Plaintiffs, relying on Penguin's [which, pursuant to paragraph 2 of the complaint, expressly includes Penguin Putnam, Pearson plc, and Pearson, Inc.] lack of disclosure, purchased books from Penguin and were damaged as a result.

*Complaint* at ¶¶ 9, 12, 11 (emphasis added); *see also Crowe v. Coleman*, 113 F.3d at 1539

(stating that "[w]hen multiple defendants are named in a complaint, the allegations can be

and usually are to be read in such a way that each defendant is having the allegation made

about him individually").

To the extent that Penguin Putnam (or Pearson, Inc.) participated in, facilitated,

misrepresented, knowingly benefitted from or suppressed information regarding the secret

discounts, the court finds that plaintiffs might be able to assert a "possible" fraud or

suppression claim directly against Penguin Putnam, one of the non-diverse parties, under

Alabama law.[5]  *See* Ala. Code §§ 6-5-101 & 6-5-102 (1997); *see also Gonzalez v. Blue*

*Cross-Blue Shield of Alabama*, 689 So. 2d 812, 821 (Ala. 1997) (stating that, under Alabama

law, "[t]he elements of a fraud claim are: (1) a misrepresentation of a material fact [by the

defendant]; (2) made willfully to deceive or recklessly without knowledge; (3) which was

justifiably relied upon by the plaintiff under the circumstances; and (4) which caused

damage as a proximate consequence"); *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 423

(Ala. 1997) (stating that the elements of a fraudulent suppression claim are: "1) a duty to

disclose the facts, 2) concealment or nondisclosure of material facts by the defendant, 3)

inducement of the plaintiff to act, and 4) action by the plaintiff to his injury").  In reaching

this conclusion, the court takes into account not only the plaintiff's pleadings at the time of

removal, but also "the affidavits and deposition transcripts submitted by the parties."

---

[5] Although plaintiffs also assert claims for breach of contract and intentional interference with business relations against Penguin Putnam, the court need only determine that the plaintiffs' "complaint states a cause of action against *any one* of the [non-diverse] defendants" on any one claim to destroy diversity. *See Crowe*, 113 F.3d at 1538.

*Crowe*, 113 F.3d at 1538.

The plaintiffs have submitted various affidavits and other evidentiary materials to the court in support of their motion to remand. Among them are the affidavits of Clyde Anderson, chief executive officer of BAM and president of AWBC, and of Sandra B. Cochran, chief financial officer for BAM and AWBC. According to Mr. Anderson, he had conversations with Michael Lynton, the chairman and chief executive officer of the Penguin Group, during and since the last quarter of 1996. In these conversations, Mr. Cochran claims that Mr. Lynton represented directly to BAM and AWBC that the defendants were one consolidated entity, Penguin Putnam, and that Mr. Lynton "held himself out as authorized to speak on behalf of the entity from which [BAM and AWBC] had purchased books, and negotiated on behalf of that entity." *Affidavit of Clyde B. Anderson* (August 11, 1997) at 2. According to Mr. Anderson, at no time during these specific conversations did Mr. Lynton deny that Penguin Putnam should reimburse BAM and AWBC for the discounts they were allegedly due, nor did Mr. Lynton state that the discounts were the liability of another entity. *Id.* at 4. In fact, it is asserted that Mr. Lynton stated that Penguin Putnam's accountants would have to determine the exact amount for reimbursement, and that Mr. Lynton was going to "turn the matters over to Penguin Putnam's in-house attorneys." *Id.*

By way of Sandra Cochran's affidavit, the plaintiffs assert that she, too, discussed the issue of the secret discounts with a Penguin Putnam officer; namely, Anthony Laurino, the chief financial officer for Penguin Putnam. *Affidavit of Sandra B. Cochran* (August 11, 1997) at 1-2. According to Ms. Cochran, she had a conversation with Mr. Laurino in February 1997, which was after the time Mr. Laurino assumed responsibility as an officer of Penguin Putnam. *Id.* Mr. Laurino allegedly represented to Ms. Cochran that he was authorized to

10

speak regarding the secret discounts issued by Penguin Books. *Id.* The two also discussed who had received the secret discounts, as well as a possible resolution regarding BAM and AWBC's failure to receive the discounts. *Id.* at 2. Ms. Cochran stated in her affidavit that "[a]t no time during this conversation did Mr. Laurino state that this matter was a liability of Penguin Books USA or that he was acting solely on behalf of Penguin Books USA. Instead, it was clearly understood that he was acting as an officer of Penguin Putnam." *Id.*

In their brief in opposition to plaintiffs' motion to remand, the defendants fail to controvert–or even attempt to refute–the statements included in the affidavits of Mr. Anderson and Ms. Cochran. *See generally Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand and in Support of Defendants' Cross-Motion to Dismiss Penguin Putnam, Inc., Pearson, Inc., and Pearson plc*. In fact, the defendants admit that Penguin Putnam existed as an entity at the time of the alleged conversations by Mr. Anderson and Ms. Cochran with Penguin Putnam's officers, Mr. Lynton and Mr. Laurino. *Defendants' Memorandum* at 10 & n.5. Against this background, the court concludes that, "after drawing all reasonable inferences from the record in the plaintiff[s'] favor and then resolving all contested issues of fact in favor of the plaintiff[s']," there exists at least "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1542 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)).

## IV.  Conclusion.

Because a possibility exists that a state court would find that the plaintiffs have a valid claim of fraud or suppression against Penguin Putnam, a non-diverse party, this court

11

may not retain jurisdiction, and the case will be remanded to the Circuit Court of Jefferson County, Alabama. *See* 28 U.S.C. § 1441(b). In doing so, the court expresses no view of the ultimate outcome on the merits. Alabama's state courts, which have the final word on Alabama law, will decide all that.

     Done, this **6th** of October, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

12